```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
JACQUELINE SILVER,            :  15-cv-03462-ARR-ST
          Plaintiff,          :
                              :
    - versus -                :  U.S. Courthouse
                              :  Brooklyn, New York
                              :
CITY OF NEW YORK NYPD BAYSIDE :
QUEENS PRECINCT, et al.,      :  June 22, 2017
          Defendant           :
------------------------------X

       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE STEVEN TISCIONE
              UNITED STATES MAGISTRATE JUDGE

A   P   P   E   A   R   A   N   C   E   S:




For the Defendant:          Kaitlin E. Fitzgibbon, Esq.
                            New York City Law Department
                            100 Church Street
                            New York, NY 10007








Transcription Service:      Transcriptions Plus II, Inc.
                            61 Beatrice Avenue
                            West Islip, New York 11795
                            laferrara44@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service
```

Proceedings

2

1    THE CLERK:  Civil Cause for a Motion Hearing,
2 15-cv-3462, Silver v. City of New York NYPD Bayside
3 Queens Precinct, et al.
4    Parties please state your appearances for the
5 record.
6    MS. FITZGIBBON:  Assistant Corporation Counsel
7 Kaitlin Fitzgibbon.
8    MS. WORTMAN:  Susan Wortman.
9    THE CLERK:  The Honorable Steven Tiscione
10 presiding.
11    THE COURT:  All right.  I note for the record
12 that Ms. Silver did not appear.  Ms. Wortman, you are
13 here as a nonparty, person of interest, since you
14 received a subpoena in this case.  I'm just going to ask
15 my clerk to swear you in.
16    MS. WORTMAN:  And if, your Honor, if you can
17 explain things, like you just said something that I don't
18 understand.
19    THE COURT:  So basically, what I was just
20 saying is you're not a party in this lawsuit.  So you're
21 appearing here today just because --
22    MS. WORTMAN:  Separate.
23    THE COURT:  -- you received a subpoena in this
24 case.
25    MS. WORTMAN:  Uh-hum.

3

Proceedings

1         THE COURT: And you're appearing as a nonparty.
2         MS. WORTMAN: Okay, thank you.
3 S U S A N  W O R T M A N,
4    called as a witness, having been first duly sworn,
5    was examined and testified as follows:
6         THE COURT: Okay. So there's a couple of
7 motions we need to discuss but since Ms. Wortman is here,
8 let's deal with the contempt motion first. So there was
9 a subpoena that was issued --
10        MS. WORTMAN: Would you like a copy of
11 everything I have?
12        THE COURT: Yes, why don't you --
13        MS. WORTMAN: I made you one.
14        THE COURT: I think I have it somewhere in the
15 file but --
16 (Pause)
17        THE COURT: Do you have a copy for me?
18        MS. WORTMAN: I made you a packet of
19 everything.
20        THE COURT: All right.
21 (Pause)
22        THE COURT: Okay. So just so I understand, Ms.
23 Silver was requesting records from yourself and your
24 husband relating to -- well, relating to her case
25 generally. Can you just give me a little bit of insight

```
                                                                    4
                          Proceedings
 1   as to what, if any, relationship you've had with Ms.
 2   Silver and what --
 3             MS. WORTMAN:  I have no relationship with Ms.
 4   Silver.
 5             THE COURT:  Okay.
 6             MS. WORTMAN:  As I wrote in my letter, May
 7   31st, I'm looking for her to stop harassing me.  Ms.
 8   Silver came to my husband's temple seeking financial aid.
 9   My husband is a cantor and I'm not privy to what happened
10   there.  I was told that she didn't receive financial
11   assistance.  Now somebody told me she did receive
12   financial assistance, but it wasn't enough.  But the
13   bottom line is she thinks that my husband has her medical
14   records, and if my husband has her medical records, then
15   I have them, too.
16             And my argument is I have never seen her
17   medical records.  I'm not interested in her medical
18   records.  I don't want to know about her medical records.
19   And she's just been sending me e-mails one after another
20   after another after another.
21             She was calling our house.  I had to change my
22   home phone.  She calls in the middle of the night.  She
23   usually calls from pay phones and the only reason that we
24   know that it's her is originally when she was calling
25   from the pay phones, she would like say something nasty
```

<pre>
                                                                5
                         Proceedings
 1   in the phone.  Then she stopped talking but we still knew
 2   that it was her.  She would be calling and calling every
 3   single night, two or three times.  2 in the morning, 4 in
 4   the morning.
 5              So finally, we had to change our home phone but
 6   somehow or another, unless she got a copy of the letter
 7   that I sent here, she found my e-mail.  I don't know how.
 8   And the last month -- less than that actually, it's just
 9   constant.  It just doesn't stop.  It's one e-mail after
10   another after another.
11              She stops me in stores.  She stopped me in the
12   Gap and started yelling things that she and my husband
13   did that I wanted to crawl under a table.  She claims I
14   touched her face.  Your Honor, honestly, I just kept
15   backing away and backing away and there were people in
16   the store.  Somebody would have called the police if I
17   touched her.  I never -- I did not touch her.  I don't
18   want to touch her.  I'm not -- I just want to be left
19   alone.
20              Whatever went on behind my husband and this
21   woman with the money or with medical records, I have no
22   knowledge of it.  I mean, I don't know.  Do I go to the
23   District Attorney's Office?  Do I get an order of
24   protection?  I don't know what to do to -- and she
25   contacts my children.  She sent the subpoena to my
</pre>

```
                                                              6
                         Proceedings
 1   children and the printed letter that's on one of the
 2   first pages in her own handwriting, that went to my
 3   children, as well.  And it's harassment.
 4            And I apologize that some of the e-mails
 5   printed more than once, it's just when you try to print
 6   them, they multi-print.
 7            THE COURT:  All right.  Do you have any records
 8   pertaining to Ms. Silver, whether her medical records or
 9   anything --
10            MS. WORTMAN:  No, sir.
11            THE COURT:  -- pertaining to her other case?
12            MS. WORTMAN:  No, your Honor, I do not.  I have
13   never seen any medical records.  I don't know anything
14   about medical records.  I will swear again, if I have to.
15   I swear on my grandchildren.  I have never seen her
16   medical records.
17            THE COURT:  Or anything else related to her
18   cases?
19            MS. WORTMAN:  No, nothing.
20            THE COURT:  Okay.
21            MS. WORTMAN:  Whatever is going on has nothing
22   to do with me.  My husband has his own issues with her
23   and that would have to be a separate case but my
24   knowledge is zero.
25            THE COURT:  Okay.  Do you have any knowledge
```

7
Proceedings

1  about whether your husband has any of these records or --
2             MS. WORTMAN:  He claims he does not.
3             THE COURT:  Uh-hum.
4             MS. WORTMAN:  There's a lot of accusations in
5  the e-mails, as you can see.
6             THE COURT:  Yes, the only thing that really is
7  of concern to me at this point is whether or not there's
8  any records.  If there's no records, then --
9             MS. WORTMAN:  I don't know of any records at
10 all.  I don't even know how a person would get hold of
11 her medical records.  I don't even see how that's
12 possible.
13            THE COURT:  I don't know.  For some reason, she
14 seems to think that you and your husband have some of
15 these records.  Frankly, I am not sure how it would be
16 relevant anyway but if you don't have the records, then
17 clearly there's no --
18            MS. WORTMAN:  I don't have her records, your
19 Honor.
20            THE COURT:  -- contempt here.  Unfortunately, I
21 haven't received anything from your husband and he's not
22 here.
23            MS. WORTMAN:  Because we are handling it
24 differently.  You know, he's being accused of sexual
25 things.  He's being accused of, you know, things that I

                                                                    8
                             Proceedings

1    know nothing about.  I am just here to say I don't have
2    her medical records.  I never saw them and I would like
3    her to stop harassing me.
4              THE COURT:  Okay.
5    (Pause)
6              THE COURT:  All right.  Well, I have no reason
7    to doubt your sworn testimony that you don't have
8    possession of any records.  So I am going to deny the
9    motion for contempt.
10             To the extent that, you know, she is harassing
11   you or doing other things that are interfering with your
12   life, I don't really have -- I can direct her not to
13   continue to contact you but it's really more a question
14   of something that you might need to notify the proper
15   authorities in terms of --
16             MS. WORTMAN:  Is that the District Attorney?
17             THE COURT:  Well, the police or the District
18   Attorney, if she is doing something that's criminal in
19   nature.  But, you know, she is entitled to subpoena
20   somebody as part of the civil case and so I can deal with
21   that aspect of it.  You know, it sounds like there's just
22   no basis for it but in terms of the other actions that
23   she may or may not be taking, harassing phone calls or
24   letters or whatever, I mean, that's not really something
25   I have jurisdiction over but certainly if you feel that

Proceedings

9

1   she's doing something that's criminal in nature, I would
2   certainly --
3              MS. WORTMAN:  Well, it's again, I don't know if
4   it's criminal, it's just -- it's driving me crazy.
5              THE COURT:  Okay.
6              MS. WORTMAN:  I mean, I can't think of a better
7   word but it really, really is.  I never know where she is
8   going to be, when she is going to be and e-mails and
9   sending to my children.  It's reached the point where,
10  you know, I don't think it could be ignored anymore.
11             THE COURT:  Okay.
12             MS. WORTMAN:  And I'm disappointed that she is
13  not here today.  I really am.
14             THE COURT:  Yeah, well that would have made it
15  a little bit easier to deal with but she does have to
16  appear to court during the progress of this case and, you
17  know, as I said, I can direct her not to continue to try
18  to contact you regarding the subpoena, since it doesn't
19  appear that there's any basis for it but beyond that,
20  anything else, you are really going to have to speak to
21  the police or -- I don't know at this point if it really
22  goes as far as talking to the District Attorney's Office,
23  perhaps, you know, if you contact the police and advise
24  them about what's going on, they can give you some --
25             MS. WORTMAN:  I went to the police on Saturday

```
                                                                10
                            Proceedings
 1   and I did report harassment.
 2              THE COURT:  Okay.
 3              MS. WORTMAN:  And the report got delivered to
 4   my house, which I thought was very strange.  I don't
 5   understand.  But anyway, I was not home.  I watch my
 6   grandchildren.  I was in Westchester.
 7              THE COURT:  Okay.
 8              MS. WORTMAN:  And the report was -- I never
 9   thought it was going to be anything other than harassment
10   but the person, the P.P. -- the P.A.A. who wrote the
11   report --
12              THE COURT:  Uh-hum.
13              MS. WORTMAN:  -- he was asking me do you think
14   your husband is having an affair with this woman.  And I
15   said look, I don't know anything.  I really don't.  He
16   put into the report that I said my husband is having an
17   affair with this woman.
18              THE COURT:  Uh-hum.
19              MS. WORTMAN:  I went back to the police station
20   yesterday and I made them change that word to amended it,
21   saying that it's the perp who said that my husband is
22   having an affair with her, not me.
23              THE COURT:  Yeah.
24              MS. WORTMAN:  So I've been to the police
25   station already twice in one week.  I am thinking the
```

```
                                                                11
                           Proceedings
 1   next step is probably the DA but I don't --
 2              THE COURT:  Okay.  Has she --
 3              MS. WORTMAN:  -- know.
 4              THE COURT:  -- done anything since you've been
 5   to the police?
 6              MS. WORTMAN:  Yes, I've gotten more e-mails on
 7   my phone.  I didn't print them.
 8              THE COURT:  Okay.
 9              MS. WORTMAN:  But two more on my phone and
10   saying that she was going to be here.
11              THE COURT:  Okay.
12              MS. WORTMAN:  That was one of them.
13              THE COURT:  Okay.
14              MS. WORTMAN:  I mean I can show you my phone if
15   that means anything.
16              THE COURT:  No, I think the best thing for you
17   to do is to, you know, if she continues to harass you, is
18   to kind of update the police that she's continuing to do
19   this and, you know, I don't know exactly what actions
20   they'll take but typically they would at least go talk to
21   her and ry to figure out, you know, tell her to stop and,
22   you know, if that doesn't work --
23              MS. WORTMAN:  She's basically unreachable.  She
24   does not have a home address.  She claims to live in her
25   car.
```

Proceedings 12

1  THE COURT: Okay.
2  MS. WORTMAN: So it's very hard. I've had the
3 police to my house and the suggestion that they had was
4 well, when you see her hold her until we get there. And
5 I looked at the man as if, you know, you have to be
6 kidding. How do you hold somebody here until the police
7 come?
8  MS. FITZGIBBON: If I may, your Honor?
9  THE COURT: Uh-hum.
10  MS. FITZGIBBON: I think plaintiff needs
11 clarification as to the course of discovery that we're on
12 right now. I don't think she really understands that she
13 needs to be proving her diligence to identify the John
14 Does. She is looking for information that goes towards
15 the merits and any documents that Ms. Wortman or her
16 husband would possibly have are documents that plaintiff
17 easily could have requested herself. You know, you can
18 get your own medical records. You can make a FOIL
19 request either to the City of New York or to the NYPD and
20 I've talked with both FOIL departments. She never made
21 any such request.
22  And she isn't understanding that she needs to
23 be proving that she went to the proper agencies, not to a
24 private individual to try and identify the officers who,
25 you know, brought her to the hospital on the date of the

Proceedings 13

1  incident.  She's not understanding that.
2         And she's also not understanding what the
3  discovery entails, the fact that both parties are
4  entitled to discovery which is turning to a different
5  issue, the motion to quash my subpoena which I have
6  already withdrawn.  I withdrew it.  I told her it can be
7  denied as moot and because we withdrew it, I spoke to
8  Verizon, that's done.
9         You know, she wants to do discovery and she
10 doesn't want me to do discovery.  It is her burden to
11 prove her diligence.  So I've just kind of backed off
12 with that.  But she doesn't understand that I am entitled
13 or defendants are entitled to engage in discovery if they
14 so choose.
15        THE COURT:  Well, if she was here, I could
16 certainly explain that to her but she's not.  So you've
17 withdrew the subpoena to Verizon?
18        MS. FITZGIBBON:  Yes, we --
19        THE COURT:  What was the relevance of that
20 anyway?
21        MS. FITZGIBBON:  I mean, as far as she says,
22 her only diligence that she claims is that she had called
23 the 111 Precinct asking them who the officers were.  So
24 we were going to see if she had made the phone calls to
25 the 111 Precinct and that was the only relevance of it

```
                                                              14
                        Proceedings
1   but she had claimed that she's requesting the records, as
2   well and then we'll get them in the course of discovery
3   anyway.  So, you know, she wants to have a look at them
4   first, I guess.  So that's why we withdrew.
5   (Pause)
6             THE COURT:  All right.  I mean, to the extent I
7   can remind her again what the limited scope of the
8   discovery is, to the extent that would have any effect
9   whatsoever, given that it's just going to be a minute
10  entry that will presumably sent to wherever she receives
11  mail --
12            MS. FITZGIBBON:  Defendants would also ask that
13  the Court warn plaintiff that if she continues to not
14  show up or not prosecute her case, that it could be
15  dismissed as a sanction.
16            THE COURT:  Uh-hum.
17            MS. FITZGIBBON:  Thank you.
18            THE COURT:  I certainly intend to do that.
19  (Pause)
20            THE COURT:  All right.  So I will put in here
21  that she's reminded that the scope of discovery is
22  limited and should solely be focused on the issue of her
23  diligence in attempting to identify the officers before
24  the expiration of the statute of limitations.
25            To me, it seems like any documents that may or
```

```
                                                              15
                         Proceedings
```

1   may not be in the possession of any nonparty witnesses
2   like Mr. Wortman would be irrelevant to that but without
3   knowing more from her as to what she thinks is in these
4   documents, I can't make a final determination about
5   that.
6            But it suggests to me that they are probably
7   not relevant, even if you had them, which you don't but
8   -- even if your husband has them, I am not sure what the
9   relevance of that would be.  So, you know, I wish she was
10  here, so we could explain to her again that, you know,
11  the relevant question is what acts you undertook to
12  identify these officers.  It not about identifying them
13  now.
14           MS. FITZGIBBON:  That's what I was going to
15  say.  It seems like she is now trying to do her diligence
16  to identify who it was.
17           THE COURT:  Yeah.
18           MS. FITZGIBBON:  I mean, they're already
19  identified, so --
20           THE COURT:  So look, we have a conference
21  scheduled for July 14th.  So --
22           MS. WORTMAN:  That's with me?
23           THE COURT:  You don't have to be here, no, no.
24  This is just for the overall case.
25           MS. WORTMAN:  Uh-hum.

```
                                                              16
                          Proceedings

 1              MS. FITZGIBBON:  Is there anyway, your Honor, I
 2   actually just got another conference scheduled, it's at
 3   10 a.m. with Judge Broderick in the Southern District, I
 4   think ours is for 10:30, that one should be really short.
 5   It's an incarcerated plaintiff.  It will be a phone call.
 6   If there's any way we could push ours by maybe a half an
 7   hour.
 8              THE COURT:  It's actually at 10.
 9              MS. FITZGIBBON:  Oh, is it?  Okay.  Let me
10   check what time.
11              THE COURT:  Well, all I will say is changing
12   the time or date or the conference --
13              MS. FITZGIBBON:  I can move to adjourn that
14   one.  I was just --
15              THE COURT:  It's probably -- yeah, it's
16   probably going to make it more likely that she won't show
17   up.
18              MS. FITZGIBBON:  Right, yeah.
19              THE COURT:  So I would rather keep it the same
20   and --
21              MS. FITZGIBBON:  We might as well keep it.
22   Okay.
23              THE COURT:  -- just try to deal with it.
24              MS. FITZGIBBON:  All right.  Then I will move
25   before Judge Broderick to adjourn that one.  That's no
```

```
                                                                17
                           Proceedings
 1  problem.
 2            MS. WORTMAN:  Your Honor, is there anything
 3  that I could get from the Court saying that I was here
 4  today and that I proved that I don't have medical records
 5  and that I am being harassed, that you heard my
 6  situation, so that when I do go to the police or the DA,
 7  it's a little bit easier?
 8            THE COURT:  Well, there will be a minute entry
 9  for this on the docket.
10            MS. WORTMAN:  Do the police get a copy of that?
11            THE COURT:  No, but it's a public docket,
12  although you can access the PACER for it.
13            MS. FITZGIBBON:  I could serve the Court's
14  order on Ms. Wortman.
15            THE COURT: Yeah, if you wouldn't mind doing
16  that.
17            MS. FITZGIBBON:  That would be -- yeah.  You
18  could give me your address.  I could serve it on you.  I
19  could have it mailed to you.
20            MS. WORTMAN:  Okay.  Thank you.
21            MS. FITZGIBBON:  Yeah, yeah.
22            THE COURT:  Okay.  All right.  So I will see
23  you on July 14th.
24            MS. FITZGIBBON:  Okay.
25            MS. FITZGIBBON:  Thank you.
```

                                                                    18
                            Proceedings

1           MS. WORTMAN:  Thanks, your Honor.  I appreciate
2    your time.
3           THE COURT:  No problem.
4                 (Matter concluded)
5                      -o0o-

                                                              19

**C E R T I F I C A T E**

    I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

    I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

    IN WITNESS WHEREOF, I hereunto set my hand this **4th** day of **October**, 2017.

                                Linda Ferrara

                                AAERT CET**D 656
                                Transcriptions Plus II, Inc.